IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

HERBERT BROWN                                                          PLAINTIFF

VS.                                          CIVIL ACTION NO. 3:12cv228-DPJ-FKB

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY                                          DEFENDANT

## **REPORT AND RECOMMENDATION**

Herbert Brown brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of the Social Security Administration. Presently before the Court are the parties' dispositive motions. Having considered the motions, the memoranda in support of the motions, and the administrative record, the undersigned recommends that the decision of the Commissioner be affirmed.

### **I. Procedural History and Administrative Record**

Brown filed for a period of disability, disability insurance benefits, and supplemental security income on November 28, 2008, alleging disability due to arthritis. His applications were denied initially and on reconsideration, and he requested and was granted a hearing before an administrative law judge (ALJ). On October 7, 2010, the ALJ issued a decision denying benefits. The Appeals Council denied review, thereby making the decision of the ALJ the final decision of the Commissioner. Brown then brought this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Brown was born on March 23, 1966, and was 44 years of age at the time of the ALJ's decision. He was in special education classes in secondary school and dropped

out in the 10th grade.  He testified that he is unable to read and write, except for his name. His past relevant work experience is as a chicken catcher and logger.

The medical record is sparse.  In November of 2008, he was evaluated for complaints of neck pain.  A CT of the cervical spine revealed intervertebral disc disease at C5-C6 and C6-C7.  A consultative mental evaluation was performed by Bill Spears, Ph.D., on January 4, 2010.  Dr. Spears noted that Brown's school transcript indicated serious learning difficulties.  Mental status examination revealed problems with Brown's fund of knowledge and calculation ability.  According to Dr. Spears, Brown was unable to calculate the most elementary aspects of current events or memory.  Dr. Spears stated that although Brown was motivated to participate in the session and to successfully complete the tasks, he was incapable of doing so.  Brown was unable to understand and calculate through the questions on the Millon Clinical Multiaxial Inventory-II and the Wechsler Adult Intelligence Scale (WAIS).   Dr. Spears stated that the evidence strongly suggested that Brown was suffering from organic brain syndrome or dementia, possibly as a result of excessive alcohol intake.  Dr. Spears recommended that Brown remain in the care of a competent and willing guardian and that he not be employed.  Dr. Spears described Brown's prognosis as extremely poor.

After the hearing, the ALJ ordered a second consultative mental examination.  The examiner, Lisa Yazdani, Ph.D., attempted to administer the WAIS, the Wide Range Achievement Test 4, and the Wechsler Memory Scale.  However, Brown's effort was limited.  Dr. Yazdani did not believe the IQ scores to be valid because of Brown's lack of effort and did not report them.  Brown's scores on the Wide Range Achievement Test

were in the fifties, but Dr. Yazdani believed he was capable of much higher results. On the memory scales, he attained a general memory standard score of 45 and a working memory standard score of 57. However, the examiner stated that she believed these scores to be 15-20 points below his actual ability. Dr. Yazdani stated that because of Brown's unwillingness to provide information, the only diagnosis she could offer was a strong history of alcohol dependence. She opined that Brown appeared to be functioning in the low average to slightly below average range of intellect, that he appeared capable of performing routine repetitive tasks and the activities of daily living, and that his concentration appeared limited. Dr. Yazdani noted that Brown's social skills during the evaluation were poor, as he was resistive and uncooperative with testing. She stated that malingering should be ruled out.

  Dr. Yazdani completed a mental assessment form. In the occupational adjustments section, she rated as good his ability to follow work rules and function independently, and as fair his ability to relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, and maintain attention and concentrations. As to performance adjustments, Dr. Yazdani rated his ability to follow complex job instructions as fair, to follow detailed job instructions as good, and to follow simple job instructions as unlimited. In section three of the statement, concerning personal and social adjustment, she opined that Brown has a good ability to maintain personal appearance, a fair ability to behave in an emotionally stable manner and relate predictably in social situations, and a poor ability to demonstrate reliability. She related his poor reliability to his alcohol abuse.

3

At the hearing, Brown testified that he spends most of his time at home, sleeps or lies down approximately 14 hours a day because of pain, and does not go out. He engages in no activities. He has no money with which to purchase alcohol or pain relievers, but he obtains these, particularly hydrocodone, from relatives or friends when he can. His sister prepares and brings food for him, and he performs no housework.

## II. **The Decision of the ALJ and Analysis**

In his decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[1] He found Brown has the severe impairment of cervical disc disease but that he does not have an impairment or combination of impairments that

---

[1] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

See 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

4

meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  He found that Brown has the additional impairment of alcohol abuse but determined it to be non-severe, primarily because of Brown's limited ability to purchase alcohol.  The ALJ further found that Brown has the residual functional capacity to perform the full range of medium work but that he is unable to perform his past relevant work as a chicken catcher or logger because both of these are characterized as heavy work.  Relying upon the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ determined that Brown can perform other jobs in the national economy and is therefore not disabled.

In reviewing the Commissioner's decision, this Court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[2]  In his motion, Brown's primary argument is that the ALJ failed to apply the correct standard in determining that he does not suffer from a severe mental impairment of dementia or a similar organic brain disorder and that this finding was not based upon substantial evidence.  He also argues that because Brown suffers from a non-exertional impairment,

---

[2] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ."  *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)).  If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed,  *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

5

the ALJ erred in relying upon the Medical Vocational Guidelines to establish that there is other work that Brown can perform.[3]

A threshold question relevant to the analysis is whether the ALJ found that Plaintiff suffers from *any* medically-determinable organic mental impairment at all. The language used by the ALJ is ambiguous and unclear at times. However, a careful reading of the ALJ's decision indicates that the answer to this question is a negative.

To qualify as a mental impairment, a condition must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); *see also* 20 C.F.R. §§ 404.1508, 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."). In the beginning of that portion of the ALJ's decision setting forth his findings of facts and conclusions of law, the ALJ identifies only two such impairments: cervical disc disease and alcohol abuse, the former being severe and the latter being non-severe. He makes no mention of a mental impairment of organic brain syndrome or a similar disorder. He then moves to a discussion of the opinions of Dr. Spears and Dr. Yazdani, pointing out that in order to establish a severe impairment, a claimant must first establish a medically-determinable impairment, and observes that the record contains no diagnosis of dementia. After a discussion of the opinions of Dr.

---

[3] If a claimant has non-exertional impairments which preclude him from performing the full range of work at a given exertional level, the ALJ may not rely upon the Medical Vocational Guidelines to determine that a claimant is disabled but must instead obtain the testimony of a vocational expert as to whether work exists that the claimant can perform. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

6

Spears and Dr. Yazdani, the ALJ concludes that there is insufficient evidence to establish that Brown has a dementia disorder and states that for this reason, he finds no medically-determinable impairment.

Had the ALJ stopped here, the opinion might have been less ambiguous. Instead, he states that he has made this finding, *i.e.,* that Plaintiff suffers from no mental impairment, based, in part, on consideration of the degree of Plaintiff's functional limitations under the technique. This reliance upon the analysis of Plaintiff's functional limitations to determine the existence of an impairment is misplaced and somewhat confusing, as analysis of functional limitations is designed for rating the severity of a mental impairment once its existence has been established.[4] He also refers in this portion of the opinion to Plaintiff's "medically determinable mental impairment," and states that it is non-severe. Notwithstanding this less-than-precise language and analysis, the undersigned is convinced, after a careful reading of the entire written decision, that the ALJ was attempting to express a finding that Plaintiff has *no* medically-determinable organic mental impairment. The absence of a finding of a medical-determinable organic mental disorder renders moot any argument concerning the severity standard the ALJ applied to any such impairment. Having found no medically-determinable impairment, the ALJ was required to go no further. The only relevant question for the court is whether substantial evidence supports that finding. *See McGehee v. Chater*, 83 F.3d 418, 1996

---

[4]The regulations set forth in 20 C.F.R. §§ 404.1520a and 416.920a describe what is commonly referred to as the "technique," a process for evaluating a claimant's degree of functional loss for the purpose of determining the severity of a mental impairment. The ALJ is required to perform this analysis if he finds that the claimant has a medically-determinable mental impairment. *See* 20 C.F.R. § 404.1520a(b)(1) and 416.920a(b)(1).

WL 197435, at *2 (5th Cir. 1996) (unpublished table decision) (per curiam) (upholding ALJ's finding that claimant did not have a medically-determinable mental impairment because it was based upon substantial evidence).

In his written decision, the ALJ gave careful consideration to the reports of Dr. Spears and Dr. Yazdani. The ALJ explained that because of Dr. Spears' suggestion of the possibility of an organic disorder, he had attempted to develop the record further on this point by having Plaintiff examined by Dr. Yazdani. Dr. Yazdani indicated that Plaintiff did not cooperate in the examination and opined that Plaintiff's ability was greater than his scores indicated and that he was malingering. Based upon Dr. Yazdani's finding that Plaintiff did not put forth good effort during testing and the lack of any other mention of an organic mental disorder in the medical record, the ALJ gave little weight to the opinion of Dr. Spears. The ALJ acknowledged that Dr. Yazdani had indicated problems with concentration and social skills in her medical source statement, but he concluded that these problems were linked solely to Plaintiff's failure to cooperate in the testing.

The ALJ was free to determine the credibility of the two experts and weigh their opinions accordingly. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Dr. Yazdani's report provides substantial evidence for a finding that Plaintiff suffers from no medically-determinable organic mental impairment and that his poor test performance was the result of malingering. Thus, there is no basis for reversal or remand.

Alternatively, if the ALJ's decision is analyzed in terms of whether he erred in failing to find a severe mental impairment, the same result obtains. Plaintiff's first argument regarding severity is that remand is required because of the ALJ's failure to cite

8

to the correct severity standard. The severity standard in this circuit was established in the case of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). In *Stone,* the Fifth Circuit examined the regulation defining a severe impairment, which states that an impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The court held that this language was inconsistent with the Social Security Act, and it set forth a new severity standard for this circuit:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Id.* at 1101. Furthermore, the court stated that in the future, it would assume that the ALJ had applied an incorrect standard "unless the correct standard is set forth by reference to [the *Stone* opinion] or another of the same effect, or by an express statement that the construction [given by the *Stone* court] to 20 C.F.R. § 404.1520(c) is used." *Id.* at 1106.

The ALJ in the present action neither referred to *Stone* or a comparable case nor cited its standard. Rather, the ALJ defined a non-severe impairment as one which causes "no more than a minimal effect on an individual's ability to work." This language raises the issue of whether this "minimal limitation" standard is equivalent to, or at least consistent with, the *Stone* standard.

After the *Stone* decision, the regulations regarding severity remained essentially the same. However, the Social Security Administration responded to *Stone* and its standard by issuing a ruling attempting to clarify its policy for the determination of severity. In the ruling, the Administration stated that an impairment would be considered non-severe if it was a slight abnormality having only a minimal effect on the ability to work.

9

SSR 85-28, 1985 WL 56856, at *3 (S.S.A. 1985).  A subsequent ruling used this same "minimal effect" language.  *See* SSR 96-3p, 1996 WL 374181, at *1 (S.S.A. 1996)  Thus, as one court has observed, it appears that the Administration views this minimal limitation standard as consistent with the *Stone* standard.  *See Acosta v. Astrue*, 865 F.Supp.2d 767, 779-82 (W.D. Tex. 2012).  Not surprisingly, ALJs often cite to this regulation or quote its language.

Adding to the confusion is the fact that the Fifth Circuit has occasionally used this language in its opinions.  *See, e.g.*, *Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000) (directing that on remand, the ALJ is to determine whether claimant's mental impairments were merely "a slight abnormality of minimal effect on ability to work"); *Brunson v. Astrue*, 387 Fed. App'x 459, 461 (5th Cir. 2010) (unpublished decision) (per curiam) (stating that an impairment is not severe if it has no more than a minimal effect on ability to do basic work activities).  As a result, some district courts in this circuit have concluded that the minimal limitation standard is equivalent with the *Stone* standard.  *E.g.*, *Acosta v. Astrue*, 865 F.Supp. 2d 767, 782-83 (W.D. Tex. 2012).  Other courts, however, have reached the opposite conclusion.  *E.g., Padalecki v. Astrue*, 688 F.Supp.2d 576, 580-81 (W.D. Tex. 2010).

The language of *Stone* is clear:  It allows for a minimal effect *on the individual*, but it makes no allowance for a minimal interference *with the ability to work.*  While the Fifth Circuit has occasionally referred to "minimal effect" on the ability to work, it has never specifically addressed the issue of whether this standard is consistent with *Stone.*  The undersigned believes that unless and until the Fifth Circuit holds that *Stone* allows for a

10

minimal effect on an individual's ability to work, the better course is to apply *Stone* to require that a medically-determinable impairment having any effect on the ability to work be characterized as severe. Under this interpretation of the correct standard, the ALJ's citation in the present case to the "minimal effect" standard was erroneous.

However, failure to cite to the correct standard does not necessarily mandate reversal. *Stone* created only a presumption, and where the ALJ's written decision as a whole indicates that the ALJ applied the correct standard, or where the substantial rights of the Plaintiff are not affected, the failure of the ALJ to cite to *Stone* or track its precise language does not require remand. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012); *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986); *see also LeBlanc v. Chater*, 83 F.3d 419, 1996 WL 197501, at *3 (5th Cir. 1996) (unpublished table decision) (per curiam). Moreover, if the record is clear that substantial evidence would support a finding of non-severity under the *Stone* standard, remand is not required. *See LeBlanc* 1996 WL 197501, at *3. The undersigned has already concluded that the record contains substantial evidence to support the finding that Plaintiff suffers from *no* medically-determinable organic mental impairment. It follows, *ipso facto*, that substantial evidence supports a finding that Plaintiff does not suffer from a *severe* organic mental impairment. Moreover, Dr. Yazdani's findings, her opinion that Plaintiff failed to put forth good effort in testing, and the ALJ's own interaction with and observations of Brown provide substantial evidence to support a finding that any such alleged impairment places no limitations on Brown's ability to perform work-related activities.

11

The foregoing conclusions obviate the need to address Plaintiff's remaining arguments.

### III. **Conclusion**

For the reasons stated herein, the undersigned recommends that Plaintiff's motion be denied, that the Commissioner's motion be granted, and that the decision of the Commissioner be affirmed. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 29th day of July, 2013.

/s/ F. Keith Ball  
UNITED STATES MAGISTRATE JUDGE